**O**

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CERTAIN LLOYDS UNDERWRITERS SUBSCRIBING TO POLICY NUMBER MC-13159 ) ) ) | CASE NO. CV 11-3625 ODW (FMOx) |
| Plaintiff, ) ) ) | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15] AND DENYING DEFENDANT'S CROSS MOTION [13] |
| vs. ) ) ) | |
| BALDWIN DISTRIBUTION SERVICES, LTD., a corporation, ) ) ) | |
| Defendant. ) ) | |

## I.    INTRODUCTION

This subrogation action arises from damage to a cargo shipment during interstate transit. Certain Lloyds Underwriters Subscribing to Policy Number MC-13159 ("Plaintiff") insured a cargo of wireless routers shipped by its insured, Netgear, Inc. ("Netgear") from California to Ohio.   Defendant Baldwin Distribution Services, LTD. ("Baldwin"), sub-contracted by Federal Express, Inc. ("FedEx") to deliver the routers, damaged them during transit.  Plaintiff paid Netgear $218,224.78 to cover the loss and, by such payment, became subrogated to the rights of Netgear.

Baldwin concedes liability for the loss, but contends its liability is limited to $5 per pound, or $33,435 in total.  Plaintiff disagrees and, consequently, the parties have filed cross motions for summary judgment.  (Docket No. 13 [Baldwin's]; Docket No. 16 [Plaintiff's].)  The Court considers both motions in tandem.

## II.   FACTS

Netgear owned, and Plaintiff insured, a shipment of wireless routers ("Cargo"). (Joint Stipulation of Undisputed Facts "SUF" 1, 2). On or around June 11, 2010, Netgear contracted FedEx to ship the Cargo by truck from City of Industry, California, to a Best Buy Store in Findlay, Ohio. (SUF 3.)   FedEx prepared Bill of Lading No. 06064490004677375 for this shipment. (SUF 4; Exh. A.) This was the only Bill of Lading issued for the shipment. (SUF 17.)   FedEx sub-contracted carriage of the Cargo to Defendant Baldwin. (SUF 8) ("Baldwin did not invoice Netgear for any of the transportation services rendered by Baldwin, and Netgear did not directly pay Baldwin for any of the transportation services rendered.").

"The contract between Baldwin and FedEx under which Baldwin provided transportation services for the [Cargo] is entitled the Master Transportation Services Agreement [Master Agreement]." (SUF 9; Exh. B.) On June 11, 2010, Baldwin picked up the Cargo in good order and condition and Baldwin's driver signed the FedEx Bill of Lading. (SUF 11, 12.) The Cargo was damaged thereafter "when the Baldwin tractor fell off the roadway and overturned on Interstate 40 in Oklahoma." (SUF 13) ("As a result of the overturn, the [C]argo shifted drastically and both trailers were completely destroyed . . . The routers were a total loss."). Plaintiff obtained a salvage payment for the damaged goods in the amount of $17,933.60. (SUF 15.)

Pursuant to its insurance policy, Plaintiff was obligated, and did indemnify Netgear for this loss. (SUF 16.) Plaintiff paid Netgear the sum of $218,224.78, reflecting the invoice value of the damaged goods, plus freight charges, minus the salvage value received. (Id.) On April 27, 2011, Plaintiff brought the instant action against Baldwin for full recovery of the monies paid to Netgear.

The parties primarily disagree about the application and effect of certain contractual provisions found in the Master Agreement and Bill of Lading, "in conjunction with the operative provisions of the FedEx Tariff incorporated therein ...." (SUF 5.)

The Master Agreement between FedEx and Baldwin, under which Baldwin provided transportation services for the Cargo, provides in relevant part:

> Section 8. Claims and Liability Standards. (a) Carrier shall assume all risk of loss and liability in the transportation of any goods for FedEx from the time of Carrier's receipt of such goods from FedEx until proper delivery of the same has been made . . . All liability standards and burdens of proof will be governed by the common law applicable to common carriers and by the provisions of 49 U.S.C. 14706 (the Carmack Amendment).
>
> (b) Carrier shall be liable for the full actual loss incurred, unless FedEx declares a lesser value in writing on a Bill of Lading. The loss shall be calculated on the destination market value, and not on the "depreciated value" of the goods lost or damaged. In any event Carrier's liability shall be limited to a maximum liability of $250,000 per single trailer.

(SUF 9, Exh. B.)  Other provisions shall be discussed as necessary.

## II.  DISCUSSION

### A.  Legal Standard: Summary Judgment

Rule 56(c)quires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56© The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323-34.  The nonmoving party must use "[its] own affidavits, . . . depositions, answers to interrogatories, [or] admissions on file" to designate such specific facts. *Celotex*, 477 U.S. at 324 (citation omitted).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Only genuine disputes – where the evidence is such that a reasonable jury could return a verdict for the nonmoving party – over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248. It is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

B.      The Parties' Cross Motions

To begin, "the only writings before the Court are the [Master Agreement] and the FedEx Bill of Lading." (Docket No. 21 at 3) (citing SUF Exhs. A, B.) The former, upon which Plaintiff relies, renders Baldwin liable for the "full actual loss incurred" up to a maximum of $250,000. The latter, upon which Baldwin relies, contains no express language limiting any party's liability.

Baldwin argues "Plaintiff seeks to circumvent the liability limitations imposed by the FedEx Bill of Lading and obtain a windfall under the terms contained in the Master . . . Agreement to which, Plaintiff was not a party." (Docket No. 20 at 8) ("the undisputed limitation of liability contained in the FedEx Bill of Lading extends to protect Baldwin from any liability greater than $5.00 per pound").

First, the FedEx Bill of Lading contains absolutely no express language limiting either FedEx or Baldwin's liability. That document merely states that "liability limitation for loss or damage in this shipment may be applicable." (SUF, Exh. A) (citing 49 U.S.C. 14706(e)(1)(A) and (B)). Accordingly, accepting Baldwin's argument that the Fed Ex "Bill of Lading governs the entire transportation of Netgear's routers [and], thus, Baldwin's liability is limited to the terms of that agreement" (Docket No. 13 at 6), the Court cannot but conclude that Baldwin's liability is not at all limited.

Second, Baldwin's insistence that the Bill of Lading limits its liability is based exclusively on the undisputed fact that Netgear agreed to limit *FedEx's* liability to $5 per pound. (*See* SUF 5) ("Pursuant to the Bill of Lading, in conjunction with the operative provisions of the FedEx Tariff incorporated therein, Netgear agreed that FedEx's liability to Netgear for loss or damage to [C]argo in transit would be limited to $5.00 per pound.")

Baldwin's heavy reliance on this stipulated fact is misplaced. For one, while the parties may of course stipulate to facts, they may not similarly stipulate to the legal effect of those facts. *See*, *e.g.*, *S. Pac. Transp. Co. v. United States*, 462 F. Supp. 1227, 1239 (E.D. Cal. 1978) ("Parties may stipulate to facts but they may not stipulate to the law. Such stipulations as to the law will be disregarded.") (citation omitted). And, while such a stipulation might benefit FedEx, it does not benefit Baldwin, absent some provision extending it the benefit of FedEx's limitation of liability. This is especially true where "Netgear has stipulated that it agreed, *in a separate document*, to limit Fed-Ex's liability for loss or damage to $5 per pound." (Docket No. 23 at 1 n.2) (emphasis added).

Thus, with little help from the Bill of Lading, the Court turns to the Master Agreement in search of direction. The Master Agreement provides:

> Cargo tendered under this agreement shall be accompanied by a FedEx bill of lading ("Bill of Lading"). In the event of any conflict between any term or provision of this Agreement and the Bill of Lading, the term or provision of this Agreement shall govern to the extent of the conflict.

(SUF, Exh. B Section 3(a)).

Here, the conflict is not between the Master Agreement and the Bill of Lading, but one between the Master Agreement and Baldwin's *reading* of the Bill of Lading. All the same, pursuant to this provision, the Master Agreement shall govern over the Bill of Lading "to the extent of the conflict." (Id.) Thus, according to the Master Agreement, "[Baldwin] shall be liable for the full actual loss incurred, unless FedEx declares a lesser value in writing on a Bill of Lading." (Exh. B, Section 8(b)) ("In any event Carrier's liability shall be limited to a maximum liability of $250,000 per single trailer.").

As "neither Netgear nor FedEx declared a value for the routers on the Bill of Lading" (SUF 7), it appears that Baldwin is liable for the "full actual loss incurred." (Id.) This is particularly so because the default measure of damages under the Carmack Amendment is "the actual loss or injury to the property." 49 U.S.C. § 11706(a).

In sum, Baldwin concedes liability for the destroyed routers. (SUF 13, 14.) Pointing to the Bill of Lading, Baldwin argues its liability is limited to $5 per pound. The Bill of Lading includes no such limitation, however, and Baldwin offers no support for this contention, other than dubious, stipulated "fact" No. 5. Of the two documents before this Court – the Master Agreement between FedEx and Baldwin and the Bill of Lading – only the Master Agreement, which by its terms trumps the Bill of Lading, limits Baldwin's liability. Specifically, it provides that Baldwin "shall be liable for the full actual loss incurred, unless FedEx declares a lesser value in writing on a Bill of Lading. . . . In any event Carrier's liability shall be limited to a maximum [ ] of $250,000 per single trailer."

## III.   CONCLUSION

Baldwin concedes liability but fails to meet its burden of showing that its liability is limited by the Bill of Lading to $5 per pound. Accordingly, Baldwin is liable for the "full actual loss incurred . . . [up to] $250,000 per single trailer. Plaintiff's motion is therefore **GRANTED** and Baldwin's is **DENIED**.


**SO ORDERED**

December 2, 2011

_____
OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE